When Wilbert Glover was detained at the Ramsey County Adult Detention Center, he encountered an environment of severe and pervasive racial harassment and discrimination. Mr. Glover reports that racial slurs were used to refer to him and other inmates three to four times per day every day that he was at the ADC. And when he filed grievances complaining about the environment that he found himself in, those grievances were ignored or they were rejected. Worse yet, Mr. Glover was retaliated against for filing those grievances in the first instance. Seeking relief from this awful environment, Mr. Glover filed a pro se complaint before the district court, and he remained pro se throughout the district court proceedings. On appeal, Mr. Glover is challenging two orders issued by the district court, one on a motion to dismiss and one on a motion for summary judgment, that resulted in the dismissal of all of his claims against all defendants. It's worth noting at the outset that defendants agree on appeal that the district court's failure to address Mr. Glover's retaliation and claims under the Minnesota Human Rights Act on the motion to dismiss was error and that those claims should be reversed and remanded to the district court for further proceedings. So the question here before this court should be not whether this case is going back, but how much of it is. And we would posit, Your Honors, that in addition to returning the claims that I already mentioned, that Mr. Glover's equal protection claim, which was summary judgment was granted for the defendants, should be returned as well. In its motion for summary judgment ruling, the district court committed two different errors, which I will address in turn. First, the district court concluded that there was no admissible evidence that supported Mr. Glover's equal protection claim. Now, the summary judgment record that Mr. Glover submitted in opposition to the defendant's motion for summary judgment was 17 filings, totaling 107 pages. And while that might sound like a lot, when we think about a typical summary judgment record and the voluminous briefing that can go along with it, that actually isn't very much at all. And within those 107 pages, Mr. Glover submitted four distinct statements that were sworn, that I will outline. So first, he submitted a charge of discrimination that he had submitted to the Minnesota Department of Human Rights, in which Mr. Glover described the racially harassing environment at the ADC. Second, Mr. Glover submitted a notarized letter that he had sent to then-Ramsey County Commissioner Blake Huffman, in which he again described the racially abusive environment he was experiencing and specifically noted that Defendants Rodriguez and Padgett were people to whom he had submitted grievances and who had taken no action. Finally, Mr. Glover submitted affidavits, two of them, that were responsive to affidavits that Defendants Rodriguez and Padgett had themselves submitted in support of the motion for summary judgment, in which Mr. Glover refuted what those defendants had said based on his own personal knowledge so that it wasn't true and said that they were responsible for some of what he was experiencing. Taken together, these four affidavits read collectively, given the liberal construction that pro se filings are entitled to, they paint a clear picture of the testimony that Mr. Glover was prepared to offer. How about though the damage question, that he seemed to seek only compensatory damages which the PLRA forbids? Yes, Your Honor. So, so we do not... Let me, let me finish the question so you can deal with it all at one time. And then having been put on notice of that in a motion to dismiss or summary judgment, he didn't respond to that. So didn't he forfeit that argument? So thank you, Judge Render. So no on both points. So with respect to the first one, we do not believe that Mr. Glover's complaint sought only compensatory damages. If you look at the text of the complaint, which we included in our briefing, he asked for that language almost exactly mirrored the pro se complaint form that he was using, which said, state the amount of monetary compensation that you want. So money compensation goes beyond compensatory damages. Compensatory damages are part of that, but nominal damages and punitive damages are also money compensation that can be awarded. And so again, giving Mr. Glover's pro se complaint a liberal construction, we think his, his request for money compensation fairly encompassed a claim, certainly for nominal damages and arguably for punitive damages as well. On the second point about whether Mr. Glover waived that argument, if the court takes a careful look at the briefing that the defendants submitted, throughout the briefing, they talk about money damages and monetary compensation. Again, there's not an argument specifically that compensatory damages were all that was being sought. And so Mr. Glover's failure to respond to that was an error or wasn't, wasn't waiver because it wasn't something that the defendants had fairly raised. It was something that the court came up with on its own and introduced for the first time in the district court's order. And so for that reason, we don't think that the argument there was waived. While we're on the PLRA point, I will just note in addition that, as we mentioned in our opening briefing, we do think that the basis of this line of arguments, the Royal case, which was a split panel opinion by this court, in the decades since Royal was decided, other circuits have come out on the other side of the question of whether compensatory damages really should be barred for constitutional injuries like the First Amendment and Fourteenth Amendment claims that are at issue here. I'm sorry. I thought you, did you say a minute ago that the court itself, sua sponte, came up with this issue? I thought the other side responded to, in their summary judgment, raised this question. Am I wrong about that? No, Judge Grander, you are correct. So the distinction I was drawing is that the defendants did not specifically argue that all Mr. Glover was seeking was compensatory damages. Throughout the complaint, they say that money damages and money compensation in general are barred by the PLRA. And that's an overstatement, even under Royal, of what the PLRA requires. Nominal and punitive damages are permissible for non-physical injuries. So it wasn't that, it was that the argument they made was too broad. And then the district court made the correct, she was correct under this court's precedent that compensatory damages. You're saying the district court narrowed the argument? Correct. But since the defendants hadn't raised that argument, Mr. Glover didn't waive it by failing to respond to it. Of course, to return to the Royal point, we recognize this court is bound by the prior panel ruling, but would say that this is a ripe question for reconsideration given the centrality and importance of plaintiffs being able to recover for injuries like First Amendment and 14th Amendment injuries that often don't have a physical injury component. Unless the court has any further questions, I'll reserve the rest of my time for rebuttal. Thank you. Mr. Roach. May it please the Court, I'm Assistant Ramsey County Attorney Robert Roach on behalf of the District Court. I want to make a couple of points. First, the state's protection claim based on the alleged denial or lack of response to his grievances fails for two reasons. First, it's barred by qualified immunity because this Court and other federal courts have held that an alleged failure to investigate a grievance or a denial of a grievance is insufficient to state a claim for supervisory liability under Section 1983. For example, in Buckley v. Barlow at 997 F. 2nd 494, this Court held that an alleged failure to properly process an inmate's grievance form does not establish liability under Section 1983. At least one lower court has interpreted Buckley as meaning that an alleged failure to respond to a grievance is insufficient to support a claim for failure to train or supervise. And I would cite the court to Dierks v. Doe's 2013 WL5830267 for that point. Other federal courts have also similarly held that a failure to supervise or train claim cannot survive if the only thing you're saying the supervisor did was they didn't approve my grievance or they failed to respond to it. In Sheehy v. Luttrell, 199 F. 3rd 295, a prisoner claimed that he was fired from a coveted prison job in retaliation for filing grievances against guards. The prisoner grieved his termination to those guards' supervisors and said they failed and then tried to sue the supervisors saying they didn't respond to my grievance and remedy the allegedly illegal discharge. The Sixth Circuit said there is no supervisory liability where the only basis is this alleged failure to approve a grievance over someone else's purported misconduct. The Sixth Circuit said the same thing in Martin v. Harvey, 14 Federal Appendix 307. And then finally, the district court for the Eastern District of Michigan in Howard v. Garden, 2011 Westlaw 836757. In that case, a prisoner claimed he was subjected to an illegal retaliatory transfer to a different prison. The court rejected the argument that a supervisor's alleged failure to respond to a grievance appeal could qualify as personal involvement to support supervisory liability. We have argued in our brief that this issue is not properly before the court because it was not sufficiently raised below. But assuming arguendo that it is before this court, it fails for qualified immunity. These cases establish that even taking the plaintiff's assertions that Padgett and Rodriguez either denied or failed to respond to his grievance, that's not a constitutional violation. At a bare minimum, these cases indicate that it is not clearly established that the failure to respond or the denial of a grievance would give rise to supervisory liability and therefore the claim fails. The second part of plaintiff's equal protection claim fails, the part that the district court, I think, thought was the only claim that was left, which was an allegation that, you know, were these grievances denied or ignored out of racial That claim fails because plaintiff never submitted admissible evidence that Rodriguez or Padgett discriminated against him. It is well settled that a plaintiff cannot avoid summary judgment with bare assertions that are not supported by evidence of admissible facts that would allow the trier of facts to find in the plaintiff's favor without resorting to They denied my grievances, and it was because of my race. There are no facts in those affidavits to support that claim of racial animus. This Court and other Federal appellate courts have held that these sort of naked assertions of discriminatory motive are insufficient to avoid summary judgment in discrimination claims where there are no supporting facts. And I'd But what about the — your friend mentioned at least four documents that were submitted to the district court at various times that were sworn and that did include additional allegations. None of those documents, Your Honor, include allegations of conduct or statements by Rodriguez or Padgett that would support an inference of discrimination. What those said, it was other officers have used racially reprehensible language. I've complained. They haven't done anything about it or they've denied it. But there are facts in those affidavits to suggest that they were motivated by discriminatory animus. And I'd like to cite three cases to this Court on this point. In Francis v. Coughlin, 891 F-3rd — excuse me, F-3rd 43, the Second Circuit held that a prisoner's bare assertion of bias and prejudgment on the part of a prison disciplinary officer was insufficient to defeat a well-supported motion for summary judgment. This Court likewise affirmed summary judgment for a defendant in a discrimination case where the plaintiff only made bare assertions of discriminatory motive. The case is Keele v. Select Artificials, 169 F-3rd 1131. That was a disability discrimination case. And the Court said, if all the plaintiff is saying is they did this to me because I'm disabled, but they cannot show evidence of any discriminatory conduct or statements by the specific defendant, that's not good enough to survive summary judgment. Similarly, in Menci v. Little Rock, 917 F-3rd 685, this Court affirmed summary judgment dismissing an equal protection claim where — and that was a zoning case. The zoning applicant said the city denied my zoning request on the basis of my race. But she did not support her claim with any specific facts, statements, conduct by the zoning board to support that. And the Court said unsupported evidence beyond the nonmoving party's own conclusion was insufficient to — to defeat summary judgment. Under these cases, the district court's conclusion is correct. The plaintiff was relying on naked assertions of discriminatory animus. And under these cases, that is simply not enough on summary judgment. I do want to address the PELRA issue. I respectfully submit that this is not before this Court. At the district court, the defendants argued that the plaintiff was not entitled to recover compensatory damages because he had not submitted evidence or allegations of physical injury. The plaintiff never argued, wait, what — I want punitives or nominal damages. In fact, he never responded to the PELRA argument at all. The first time we heard anything — So that's a forfeiture, though, not a waiver, right? Yes, Your Honor. The first time we heard — So then it is properly before us, just on plain error. I'm sorry, Your Honor. I would argue that it was waived because he did not raise it or argue it at all below. I'm arguing that a plaintiff, even a pro se plaintiff, cannot raise an issue for the first time on appeal. The first time we heard anything about punitive or nominal damages was in the appellate plea. Well, why wouldn't you have assumed that if someone says they want monetary damages, that that would include all forms of monetary damage? Your Honor, it did not occur to me. It did not occur to the magistrate judge. And it did not occur to the Article III judge that heard this case that the — that that's what the plaintiff was pursuing. When I read the complaint saying money compensation, I interpreted that as compensatory damages. And that was the way that the two judges who heard this case below saw it. I would also point to this Court's decision in Stone v. Harry, 364 F. 3rd 912. And that case simply stands for the proposition that although pro se plaintiffs are entitled to a liberal interpretation, that does not change the general rule that you can't raise an issue for the first time on appeal. It is my argument that the plaintiff is doing that here. I would also cite the Court to its decision in Anheuser-Busch v. Labatt, 89 F. 3rd 1139. That case stands for the proposition that although there are no specific pleading requirements for punitive damages under Federal law — But would you — would you say if he just said I want money, would you have felt the same way? Or is it — is it adding the word compensation that you think would limit it to compensatory? That's a hard question to answer, Your Honor. I haven't analyzed it under — under a different set of circumstances other than what he actually pled. So I can't really answer that question as a hypothetical. I'm sorry, Your Honor. I don't know what I would have done if he had done that. If he had said anywhere in the pleadings, punitives, or brought the subject up, I would have responded to it. In Anheuser-Busch v. Labatt, does — How many pro se plaintiffs are going to know the distinctions between punitive, nominal, and compensatory? I don't know the answer to that, Your Honor. I understand Mr. Glover is a somewhat frequent litigant. I believe he may. But the — I'm running out of time. Can I finish just one thought, Your Honor? Yes. The Anheuser-Busch case that I wanted to talk about, that stands for the proposition — not only was this not argued at summary judgment, in all the pleadings that plaintiff filed, he never brought up punitive damages until we were on appeal. In Anheuser-Busch, this Court said, you can't do that. You can't bring it up at the 11th hour. That involved a set-aside of punitive damages where the plaintiff didn't bring it up until jury instructions were submitted and the defendant objected. And the Court did — this Court said, you've got to at least put the defendant on notice. We were not on notice that this was an issue. And again, I believe the two judges below saw it. It was not — it was not raised below. Now, which issue are you talking about? The — the punitive nominal damage, the Pell-Ray issue, Your Honor. Okay. In conclusion — Now, do you still contend that there was no raising of a — a state claim for supervisor liability? I — I do claim that, Your Honor. My understanding below, and I believe that was the district courts, was that the sole claim was, was he discriminated against? Did the supervisors directly discriminate against him on — in the administration of the grievance system? So you don't think there was a claim raised for the supervisor's failure to correct the others who were pursuing these racial animus statements? I — I don't believe that that was raised below. But if it was, then I would rest on my argument that I began with, that it's barred by qualified immunity if all they're saying is you denied the grievances, and two, you — you never showed it — well, that would go to the direct discrimination. You never introduced evidence that they directly discriminated against you. Thank you, Your Honor. Thank you, Mr. — Mr. Roach. Ms. McCallum, when you began, I'd like for you to address the similar question about what — what's in the record to show that the supervisory liability was raised and not — not addressed? Thank you, Your Honor. Yes. So — so again, when we're talking about the district court record, we're dealing with pro se pleadings, which are to be liberally construed. And I think if you do read those — those complaints that the court took together as one complaint, that there is throughout — throughout that pleading, there are references to what Rodriguez and Padgett did, what they knew, whether they could have controlled it. There's also Rodriguez and Padgett's own affidavits, where they acknowledge that they were responsible for the ADC, that they were the ones who were dealing with these grievances. And so I think taking Mr. Glover's allegations together with the inferences that can be drawn from Rodriguez and Padgett themselves admitting that they were the people who were overseeing this process, I think — I think Mr. Glover clearly raised a supervisory liability argument. And I think defendants understood that they — that he was doing so below because they addressed it in their briefing. They spent almost four pages in their briefing arguing about, to the extent that Mr. Glover was raising a supervisory liability point, why that failed. And so the district court then didn't address it, but that's error on the district court's part, not the failure of Mr. — Mr. Glover to raise that argument and for defendants to respond to it. Counsel for Appellees got up and cited to this court, I think, something like 12 cases. I will be honest, I think only one of them was in the briefing, so my ability to respond to that on the fly is somewhat limited. But on — on the point about the cases that Mr. Roach alleges stand for the proposition that — that there's no action for failing to respond to grievances, this is not a case about failing to respond to grievances. This is a case about racial harassment and discrimination. And so it is absolutely the case that the Equal Protection Clause protects someone like Mr. Glover from being called racially derogatory names multiple times a day, many days in a row, and then when he complains about that, for having those grievances not acted on because of his race. That is what Mr. Glover has said, both in his complaint and in his sworn affidavits, that the defendants were not responding to him because of his race. And that is very much a claim that is protected by the Equal Protection Clause. On the point about whether Mr. Glover has made bare assertions, Your Honors, Mr. Glover's testimony about what he personally experienced is admissible evidence in support of his claims. It's not bare assertions, it's his testimony. And that distinguishes this case from many of the cases on which the defendants rely in their briefing. I would direct this Court — this case is very much like this Court's prior decision in Watson, which involved an officer who allegedly sexually harassed someone, and it became a battle of the affidavits, where the officer said one thing, the inmate said another, and this Court said that's enough to go forward. That's an issue for trial. Finally, on the question of whether Mr. Glover has specifically identified Rodriguez and Paget as the people who were responsible, again, he has. I would urge the Court to take a careful look at his affidavits. He names them. He says they were responsible in his sworn statements. And for those reasons, we would respectfully ask that this Court reverse and remand the district court summary judgment order and send the equal protection claim back for trial. Thank you, counsel. Thank — the Court thanks both attorneys for the argument you provided to us this morning, and we'll take the case for an advisement. Madam Clerk, I believe that concludes our scheduled arguments for today. Is that correct? Yes, Your Honor. And I believe that also concludes our scheduled arguments for this panel for the hearing. Thank you.